JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
ORIGINAL

Go2Net, Inc.

### DEFENDANTS

CI Host, Inc., et al

RECEIVED
MAY 15 2002
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(b)** County of Residence of First Listed Plaintiff __Delaware__
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant __Tarrant County, Texas__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Peter J. Harry, Kelly Franklin Bagnall
Brown McCarroll, L.L.P.
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
(214) 999-6100

Attorneys (If Known)
Carole Faulkner, for CI Host, Inc.
1851 Central Drive, Suite 200
Bedford, Texas, 76021-5865

3-02CV 1027 H

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine **PERSONAL PROPERTY** | Safety/Health | ☒ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product / ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability / ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability / ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | Injury | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal |
| ☐ 240 Torts to Land | Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party | State Statutes |
| | ☐ 550 Civil Rights | | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. §1125(a), 15 U.S.C. §1121, 28 U.S.C. §1331, 28 U.S.C. §1338(b), and 28 U.S.C. §1367(a)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 14 May 02
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUN _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GO2NET, INC., a Delaware Corporation | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CASE NO. _____ |
| | § | |
| C I HOST, INC., a Texas Corporation. | § | |
| CHRISTOPHER FAULKNER, Individually | § | 3-02CV1027H |
| and CAROLE A. FAULKNER, Individually | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Go2Net, Inc. files this Original Complaint against Defendants, C I Host, Inc., and Christopher and Carole A. Faulkner, Individually and for same would show as follows:

### I.

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Go2Net, Inc. ("Go2Net") is a Delaware corporation with its principal place of business at 601 108th Avenue NE, Suite 1200, Bellevue, Washington 98004.

2. Defendant C I Host, Inc. ("C I Host") is a Texas corporation with its principal place of business at 1851 Central Drive, Suite 110, Bedford, Texas 76021.

3. C I Host has a place of business in this district and has directed its false and misleading statements and advertising within this district. C I Host may be served by serving its registered agent Christopher A. Faulkner at 1851 Central Drive, Suite 110, Bedford, Texas, 76021. Carole Faulkner may be served at her place of business at 1851 Central Drive, Suite 200, Bedford, Texas, 76021-5865.

4. This action arises under laws of the United States, 15 U.S.C. § 1125(a), and under state law. This Court has subject matter jurisdiction over the Lanham Act claim pursuant to 15

U.S.C. § 1121 and 28 U.S.C. § 1331. The Court has diversity jurisdiction under 28 U.S.C. § 1332. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants do business in this district and a substantial part of the events giving rise to the federal claim occurred in this district, Plaintiff has been and continues to be harmed in this district and Defendants are threatening to continue to publish their libelous and slanderous statements in this district, including but not limited to the highest circulation paper in Dallas County.

## II.

### FACTS COMMON TO ALL CAUSES OF ACTION

### GO2NET OBTAINS MONEY JUDGMENT IN WASHINGTON AGAINST C I HOST

6. Plaintiff Go2Net maintains a worldwide web network for which it accepts advertising from various subscribers. On May 15, 2000 and again in July 2000, C I Host and Go2Net entered into agreements concerning advertising by C I Host on Go2Net's network. Under both of these agreements, Go2Net agreed to market C I Host's website by displaying keyword advertisements on sites within the Go2Net network, specifically MetaCrawler and HyperMart, based on these keyword searches. *See* attachment 1 (Affidavit of Karolyn Hicks, Ex. A).

7. Pursuant to the May agreement, Go2Net was obligated to deliver to C I Host impressions based on specific keywords purchased by C I Host. An impression is a number of times that an ad banner is downloaded. A keyword is a search term used to run a search inquiry on a search engine. Under the May agreement, Go2Net was not obligated to deliver any "click through ratios." A "click through ratio" is the percentage of impressions that resulted in users clicking on an ad banner. The May agreement ran until June 30, 2000. Go2Net performed all of its obligations

under the May agreement and forwarded an invoice to C I Host for services performed under that agreement. The total amount for services performed under the May agreement was $4,513.60.

8. In the July agreement, Go2Net and C I Host entered into a second advertising agreement whereby Go2Net again agreed to market C I Host's website by displaying keyword advertisements within the Go2Net network, specifically on sites MetaCrawler, DogPile, and HyperMart. Defendant Christopher Faulkner signed the July agreement on behalf of C I Host. Go2Net delivered services to C I Host pursuant to the July agreement.

9. Go2Net performed all of its obligations under the July agreement. Total amount for services performed under the May and July agreements was $148,469.05.

10. Go2Net stopped performing its services when it became apparent that C I Host was not going to pay for any advertising under either the May or July contracts. Go2Net initiated litigation in King County Superior Court in the State of Washington on December 21, 2000 to recover its invoiced amounts pursuant to both agreements (The "Washington Lawsuit") . Subsequently, following discovery, the Court set oral arguments on a Motion for Summary Judgment January 4, 2002. Summary judgment was granted by the Court on January 7, 2002. *Id*, Ex. C.

11. Subsequently, C I Host filed a Motion to Reconsider which was also denied by the Court on February 15, 2002. *Id.*, Ex. D. Plaintiff understands that Defendant C I Host has filed an Appellate Brief in the Washington lawsuit claiming that there is some mistake of fact concerning the definition of "impressions" in the contracts and related material fact issues which precluded a grant of summary judgment. C I Host has posted no supersedeas bond and Go2Net is pursuing the Judgment in Texas, for an amount of $177,865.22, exclusive of interest to date. *Id.*, Ex. E.

## III.

## DEFENDANTS ENGAGE IN CAMPAIGN OF LIBEL AND SLANDER

12. In an effort to injure Plaintiff and avoid paying the Judgment, the Defendants have engaged upon a campaign of libel, deceit and slander in an effort to force Plaintiff to abandon its attempts to collect from the Defendant under the Washington lawsuit. Although C I Host has filed an appeal in the case, it has not filed a supersedeas bond to avoid the judgment. *See*, Hicks' Affidavit, ¶ 11.

13. It is believed that C I Host is currently not paying its trade creditors, and is raising these various slanders (as more particularly described hereinafter) in order to avoid its obligations to various vendors, including Plaintiff. In fact, a default judgment has been taken against C I Host in Tarrant County for approximately $13,000. (*See* attachment 2, Affidavit of Kelly Bagnall.)

144. Despite the fact that the issues of the interpretation of the contracts between Go2Net and C I Host had been fully argued in the Washington Lawsuit, Plaintiff is aware that the Defendants are now embarking on a campaign to libel and defame Go2Net on the Internet, and in the print media.

15. To this end, the Defendants have caused the advertisement attached to the Hicks' Affidavit as Exhibit "G" to be published on the Internet. Although the Defendants have no knowledge of how Go2Net invoices its customers, they now are representing to the public that Go2Net is deceiving the advertising public through its contracts and with its customers. More specifically, the statement is made in the Internet information already published by Defendants that the "predominant" number of impressions for which Go2Net is charging its clients consist of contacts by artificial intelligence ("AI"), such as "spiders" and "robots" and other forms of AI. This is despite the fact that the Defendants' similar arguments in the Washington lawsuit have been adjudicated in favor of Go2Net.

16. In fact, as indicated in the attached Affidavit of York Baur (Attachment 3), Go2Net filters out AI impressions from its billing logs. This has been the practice since the industry standardized this issue in the Fall of 2000. Even prior to that time, the number of AI hits was a small percentage of total impressions for which Go2Net was billing its advertisers, including C I Host, and certainly not "predominant." Thus, the statements published by the Defendants are not only misleading; but are demonstrably false.

17. It is clear that the Defendants are maliciously seeking to slander Plaintiff by making misrepresentations concerning the way Go2Net invoices its customers, even though the Defendants have no knowledge with respect to other advertisers or the current business of Go2Net. They are misrepresenting the current and past business practices of Go2Net and have indicated that they will continue to do so unless Plaintiff drops its lawsuit and refrains from executing on the judgment which it has obtained in Washington. *See* Ex. F to the Affidavit of Karolyn Hicks (letter from C I Hosts' Washington attorney, Mr. Charles Nomellini.)

18. More particularly, the Defendants, which include Ms. Faulkner, C I Host's attorney and the mother of Defendant C I Host's president and CEO, Christopher Faulkner, have threatened in writing to publish the same libel and defamatory statements to advertising customers of Go2Net as well as specific newspapers, including the *Dallas Morning News* and the *New York Times Dallas Division*. The continued publication of these falsehoods and libelous representations will necessarily severely injure the business of Go2Net.

19. Moreover, Defendant Carole Faulkner is behind the misleading representations being made to individuals and customers of Go2Net and states in the Internet "Public Service Announcement" that she will provide free legal services for a class action lawsuit against Plaintiff. These representations as contained in Nomellini letter and on the internet sites imply that the persons

to whom the communication is addressed do qualify or will qualify under a class action lawsuit and that C I Host will be providing free legal service to anyone who joins in this action.

20. In addition, Defendants have authorized and are continuing to authorize the misuse of Plaintiff's trade name and logo "Go2Net" in a series of websites where it is publishing the same false and misleading statements that have already determined to be false in the Washington Lawsuit. More particularly, in a series of websites, as demonstrated in the e-mail and web hosting documents attached to the Affidavit of Hicks (¶ 13, Ex. G) the name "Go2Net" is used in connection with a number of websites alleging these libelous and defamatory statements. More particularly, they include "www.Go2NetAdvertising.com; www.Go2NetAdvertising.net; www.Go2NetFraud.com; www.Go2Net.net; www.Go2NetFakeAdvertising.com; www.Go2NetFakeAdvertising.net; www.Go2NetScam.com; www.Go2NetScam.net; www.Go2NetDeceit.com; www.Go2NetDeceit.net; www.Go2NetDeceptivePractices.com; www.Go2NetDeceptivePractices.net; www.Go2NetScams.com; and www.Go2NetScams.net." *See* Affidavit of Greg Sundberg (Attachment 4). Defendants' misuse and unauthorized misappropriation of Plaintiff's trade name and registration of "Go2Net" is clearly designed to create confusion among the general public, to dilute and misappropriate Plaintiff's trademark, and to disparage Plaintiff generally.

21. As shown in the Affidavit of Karolyn Hicks, when these websites are visited, the libelous "Public Service Announcement" prepared by the Faulkners is displayed. Carole Faulkner is listed as the registrant and owner of the fraudulent websites, and has her telephone number at the bottom of the libelous statement therein. (*See* Affidavit of Sundberg, Exhibits A-N.) She apparently is operating the websites as a means of causing damage to Go2Net, both to gain leverage against Plaintiff's efforts to collect on its Washington judgment, and to hurt a competitor of her son's business, C I Host.

22. The Defendants, despite having been informed in writing and by e-mail that they need to discontinue these deceptive, defamatory, libelous and unethical representations, have refused and continue to refuse to do the same. *See* Affidavit of Hicks, ¶ 14 (Ex. H). Plaintiff hereby petitions this Honorable Court to invoke its powers to prevent further damage to Go2Net's business reputation, its customer relationships, and to enable Go2Net to protect its registered trademarks and trade names. Upon final hearing, Go2Net will ask for permanent injunctive relief and its damages as described below.

### IV.

### REQUEST FOR INJUNCTIVE RELIEF

23. Go2Net would show the Court that Defendants have conspired to libel and defame Plaintiff based upon knowing falsehoods and matters which have already been adjudicated in the Washington Lawsuit. Unless the Defendants, and those working in concert with them or at their direction, are immediately restrained from publishing falsehoods and using Plaintiff's trademarks and registered trade names in connection with websites designed for no purpose other than to hurt Plaintiff's business reputation in the business community and among its clients, severe damage will be done to Plaintiff. Defendants have already embarked upon the libelous ad campaign; unless Defendants are immediately restrained, they will carry out threats set forth in Mr. Nomellini's letter.

24. Plaintiff requests that this Honorable Court immediately issue a temporary injunction, and then upon hearing, a temporary and final injunction against these Defendants and those acting in concert with them from continuing to publish the following matters.

    a. The use of "Go2Net" in any websites, domain names, or advertisements.

    b. Making any representations about Go2Net's use of "impressions" in advertising contracts.

c. Making representations that Go2Net or its affiliates, parents or subsidiaries use "predominantly" AI contacts in counting impressions in advertising contracts.

d. That any customer of Go2Net or its affiliates, parents or subsidiaries has been defrauded by virtue of Go2Net predominantly using AI contacts in counting impressions for billing purposes.

e. That C I was defrauded as a result of Go2Net predominantly using AI contacts to count impressions for billing purposes.

f. That anyone who does business with Go2Net has been defrauded and qualifies for class action status and will be provided free legal representation by C I Host or Ms. Carole Faulkner.

Further, Plaintiff requests that C I Host be required to publish a complete and full retraction of its misstatements on its own website.

V.

## COUNT 1(LANHAM ACT § 43(a))

25. Go2Net incorporates herein by reference each and every allegation contained in Paragraphs 1 through 24 above.

26. As set forth above, C I has made false and deceptive representations and statements of fact about the nature, characteristics and quality of its services and those of Go2Net.

27. Go2Net believes and hereby alleges that the above-described statements have a tendency to deceive and, in fact, did actually deceive a substantial segment of the statement audience.

28. Go2Net is informed and believes that this false and misleading description of Go2Net's business is likely to influence purchasing decisions by potential advertisers and users of Go2Net's network and advertising.

29. These representations were made in connection with Interstate Commerce.

30. Go2Net is informed, and believes and alleges that as a direct and proximate result of this deceptive and false advertising and representations, Go2Net has been injured and is likely to be further injured by declining sales, lost profits and lost goodwill. The losses are substantial and material and their full extent will be established at the trial of this lawsuit.

31. By the acts complained of herein, Go2Net has been and is likely to be continuously and irreparably harmed and therefore has no adequate remedy at law. Go2Net is informed and believed that, based upon its written threats, the Defendants will continue their unlawful acts unless and until enjoined by this Court.

32. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Go2Net to its reasonable attorneys' fees and costs.

## VI.

## COUNT 2

### CYBERSQUATTING 15 U.S.C. § 1125(d)

33. Go2Net incorporates herein by reference each and every allegation contained in Paragraphs 1 through 32 above.

34. Go2Net is the owner of the mark, "Go2Net," pursuant to a series of applications with the United States Patent and Trademark Office.

35. Defendants are competitors of Go2Net and specifically of Go2Net's website HyperMart which provides web hosting services. In bad faith attempts to circumvent Internet viewers from reaching Go2Net advertising websites and instead route viewers to sites owned and operated by Defendant C I Host, Defendant is stealing Go2Net customers for its own profit.

36. The Defendants have used the following 14 domain names: www.Go2NetAdvertising.com; www.Go2NetAdvertising.net; www.Go2NetFraud.com; www.Go2Net.net; www.Go2NetFakeAdvertising.com; www.Go2NetFakeAdvertising.net; www.Go2NetScam.com; www.Go2NetScam.net; www.Go2NetDeceit.com; www.Go2NetDeceit.net; www.Go2NetDeceptivePractices.com; www.Go2NetDeceptivePractices.net; www.Go2NetScams.com; and www.Go2NetScams.net with a bad faith intent to profit from the Go2Net mark and cause confusion among consumers.

37. The Defendants have registered, and are trafficking and using the domain names, which are identical to and dilutive of Go2Net's distinctive Go2Net mark.

38. The use by the Defendants of the domain names has caused actual confusion and is likely to continue to cause confusion among consumers as to the source of sponsorship of the Defendants' websites.

39. The Defendants have engaged in and continue to engage in these activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages against the Defendants, in an amount to be determined at the time of trial.

40. At the very least, the Defendants' actions justify an award of statutory damages in the amount of $100,000 for each of the 14 domain names, pursuant to 15 U.S.C. § 1125(d).

41. The Defendants' acts of cyberpiracy, unless enjoined by this Court, will continue to cause Go2Net to sustain irreparable damage, loss and injury, for which Go2Net has no adequate remedy at law.

## COUNT 3

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

42. Go2Net incorporates herein by reference each and every allegation contained in Paragraphs 1 through 41 above.

43. Go2Net would show that the above-described willful and intentional actions are unjustified and have resulted in damage to Plaintiff's contractual relationships with existing customers. The unjustified libel and defamation by the Defendants, in conjunction with this misappropriation of Plaintiff's trade name, presumably will result in damage to Go2Net's existing contractual relationships with its customers. Moreover, said libelous and defamatory acts of the Defendants have resulted in, and are calculated to result in, damage to Plaintiff's prospective relationships with customers.

44. As a consequence of the foregoing, Defendants are jointly and severally liable for damages resulting from their misappropriation and misuse of Go2Net's trade name, and the publication of numerous false statements both in the print media and otherwise which are designed to and have hurt Go2Net in an amount in excess of the jurisdictional limits of this Court, for which Go2Net sues.

## COUNT 4

## BUSINESS DISPARAGEMENT

45. Go2Net incorporates herein by reference each and every allegation contained in Paragraphs 1 through 44 above.

46. The above-described actions by the Defendants constitute business disparagement. Defendants have falsely represented the quality, character and services of Plaintiff's business in an attempt to do nothing more than to, *inter alia,* interfere with Plaintiff's advertising contracts. It is also being done to avoid the judgment which Go2Net has obtained against Defendant C I Host.

47. More particularly, the Defendants jointly and severally are guilty of publication of disparaging words, to wit, the mischaracterization of Go2Net's use of AI in computing impressions. Said statements are false and known to be false by the Defendants. Go2Net will show that the Defendants published these falsehoods maliciously and both to attack Go2Net because of their defeat in litigation over the same issues in the State of Washington and to interfere with existing contracts with existing and future customers.

48. Go2Net would show that the Defendants have taken these actions without any justification or privilege whatsoever and Plaintiff will show that it has suffered special damages, in an amount in excess of the judgment obtained in Washington.

49. Plaintiff Go2Net will show that individual Defendants Christopher and Carole Faulkner are liable for C I Host's libelous publications because they were involved by aiding, assisting and/or advising in its publication and production, and their corporate duties demonstrate their control over the publications.

## COUNT 5

### CONSPIRACY TO TORTIOUSLY INTERFERE WITH CONTRACT OR BUSINESS RELATIONSHIPS.

50. Go2Net incorporates herein by reference each and every allegation contained in Paragraphs 1 through 49 above.

51. Plaintiff would show that C I Host, Christopher Faulkner and Carole Faulkner have conspired to tortiously interfere with the business relationships of the Plaintiff. More particularly, Plaintiff would show that the Defendants have acted jointly and severally through a conspiracy to damage the business of Plaintiff by misrepresenting, misappropriating and fraudulently using the trade name of Plaintiff in various websites which are designed to hurt the business of Plaintiff. Moreover, as part of this conspiracy, they have conspired to publish falsehoods and have threatened

to publish these falsehoods for no reason other than to damage the business of the Plaintiff and to gain leverage in attempting to avoid the $177,000 judgment which has been obtained against them. The unlawful acts perpetrated by these Defendants include the usurping, misuse and adoption of Plaintiff's trade name in various websites allegedly for purposes of making "public service announcements." These "public service announcements" are nothing more than business disparagements, libels and defamation which the Defendants jointly and severally have used to damage the Plaintiff.

52. Plaintiff sues the Defendants jointly and severally for its damages, which are in excess of the jurisdictional limits of the Court, in an amount to be proven at trial.

## COUNT 5

## LIBEL AND SLANDER

53. Go2Net incorporates herein by reference each and every allegation contained in Paragraphs 1 through 51 above.

54. Pursuant to Tex. Prac. & Rem. Code § 73.001 *et seq.* Plaintiff brings an action against all three Defendants for libel and slander. Plaintiff would show that Defendants have made the following misstatements and/or characterizations of Plaintiff's billing and invoicing practices maliciously and without any legal or business justification whatsoever:

    a. That Go2Net bills its customers for predominantly AI impressions;

    b. That Go2Net has attempted to cover up a practice of predominantly basing their count and advertising impressions based predominantly on computers and AI;

    c. That Go2Net is overcharging and lying about the impressions that they are delivering;

    d. That "If you have paid money to Go2Net for advertising, you have suffered damages and qualify for a class action status to sue Go2Net;"

e. Go2Net bills its customers based upon "inflated inaccurate advertising and impression counts;"

f. That Go2Net is inflating the impressions used in advertising billings by using "behind the scenes software;" and

g. That "when you advertise with Go2Net you have been fraudulently induced into advertising on a website where no human being may ever see your advertising or see your product."

55. These misstatements, to the effect that Go2Net as a corporation has been lying and purposely defrauding its advertisers is wholly false and known to be false by the Defendants. Nonetheless, the Defendants have caused these misrepresentations to be published both on the Internet, and have threatened to publish them in other media. Plaintiff has been damaged and faces the prospect of continued damage if the above-described actions of the Defendants are allowed to continue. Plaintiff sues for its damages under this cause of action in an amount in excess of the jurisdictional limits of the Court and in an amount to be determined at trial.

## COUNT 6

### NEGLIGENT MISREPRESENTATION

56. Go2Net incorporates herein by reference each and every allegation contained in Paragraphs 1 through 55 above.

57. Go2Net would show that the Defendants have negligently made misrepresentations about the advertising and billing practices of Go2Net with respect to counting of AI impressions. The Defendants have made these representations, with no actual knowledge of how Plaintiff counts its impressions. These statements were made recklessly for the purpose of hurting the Plaintiff in its business both to gain leverage against Plaintiff's attempts to recover its judgment against the Defendant C I Host, and because Go2Net is a competitor of C I Host.

58. The misrepresentations made by Defendants relate both to past situations and current alleged actions of the Plaintiff, which representations Defendants knew or should have known to be false at the time made. The statements were made recklessly without any knowledge of their truth and as a positive assertion. Had the Defendants investigated the situation, they would know that since Fall of 2000, Go2Net as a matter of policy actively filters out "hits" from AI from its impression based advertising.

59. Said misrepresentations were designed to induce Go2Net's current customers and potential future customers of Go2Net to avoid doing business with the Plaintiff, and presumably become customers of C I Host. Because of the pecuniary loss which Plaintiff has suffered and will suffer, caused by loss of business relating to the negligent misrepresentations of the Defendants, it hereby requests relief in an amount in excess of the jurisdictional limits of the Court and in an amount to be determined at trial.

## COUNT 7

### EXEMPLARY DAMAGES

60. Go2Net incorporates herein by reference each and every allegation contained in Paragraphs 1 through 59 above.

61. Plaintiff would show that the Defendants are jointly and severally liable for exemplary damages because the actions taken above in usurping the trade name of the Plaintiff for purpose of publishing libelous statements about Plaintiff's business were done willfully, maliciously and without justification whatsoever. The Defendants know that the misrepresentations that they made, particularly that Go2Net has in the past or does presently "predominantly" use AI impressions for purposes of over billing and defrauding its customers, were false and constitute the most vicious and unjustified attempt to destroy the business of Plaintiff.

62. Their actions were done fraudulently and with actual malice, showing ill-will, spite, evil motive and a purpose to destroy and significantly damage the business of Plaintiff, a direct competitor. Plaintiff hereby sues all Defendants for exemplary damages in an amount in excess of the jurisdictional limits of the Court and in an amount to be determined at trial.

## COUNT 8

### TEXAS BUSINESS AND COMMERCE CODE § 16.01, *ET SEQ.*

63. Go2Net incorporates herein by reference each and every allegation contained in Paragraphs 1 through 62 above.

64. Go2Net would show that the above-described actions of the Defendants in making misrepresentations concerning the billing practices of the Plaintiff were done to injure Plaintiff's business reputation. In addition, the use of Plaintiff's trade name and trademark in connection with this scheme to dilute Plaintiff's trademark and harm Plaintiff's business are in violation of the Texas Trademark Act. Plaintiff moves for injunctive relief pursuant to Texas Business and Commerce Code Ann. § 16.26(c).

65. Moreover, Plaintiff seeks to recover its direct, consequential and incidental damages, Defendants' profits, if any and Plaintiff's costs in pursuing this action pursuant to the Texas Trademark Act. Plaintiffs would show that exceptional circumstances exist in this case which would justify recovery of not only monetary relief, as well as attorneys' fees and costs because of bad faith and fraud of the part of Defendants.

66. Plaintiff therefore, in addition to requesting injunctive relief hereunder, also moves for damages in the amount of its lost profits, equitable recovery of Defendants' profits, if any, its attorneys' fees and costs.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final hearing, Plaintiff have the following relief:

1. Temporary and permanent injunctive relief as prayed for herein;

2. Actual damages as prayed for herein;

3. Statutory penalties as prayed for herein under federal and Texas trademark and anti-cybersquatting laws;

4. Exemplary damages as determined by the trier of fact;

5. Attorneys' fees;

6. Costs of court and interest on all sums at the highest legal rate, both pre- and post-judgment; and

7. Such other relief, both at law or in equity, as to which the Plaintiff shows itself justly entitled.

Respectfully submitted,

BROWN McCARROLL L.L.P.

By: _____
Peter J. Harry
State Bar No. 09134600
Kelly Franklin Bagnall
State Bar No. 07375800

2000 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 (Telecopier)

ATTORNEYS FOR PLAINTIFF,
GO2NET, INC.

DAL:439247.1
38302.2